### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| CORRIN GLAUM : | |
| 7949 Ridge Ave. Apt. C28 : | |
| Philadelphia, PA 19128 : | CIVIL ACTION NO.: _____ |
| : | |
| Plaintiff, : | JURY TRIAL DEMANDED |
| : | |
| v. : | |
| : | |
| PANCO MANAGEMENT : | |
| OF NEW JERSEY, LLC : | |
| 80 W Plaza One : | |
| Saddle Brook, NJ 07663 : | |
| : | |
| Defendant. : | |

---

## CIVIL ACTION COMPLAINT

Plaintiff, Corrin Glaum ("Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendant PANCO Management of New Jersey, LLC ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff brings this Complaint contending that Defendant has violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* In relevant part, Plaintiff contends that Defendant terminated her because of her actual disability, past record of impairment, and/or because Defendant regarded her as disabled, failed to accommodate her, and ultimately terminated Plaintiff in retaliation for requesting a reasonable accommodation in connection with her disability in violation of the ADA/PHRA. Plaintiff further contends that Defendant failed to

notify her of right to intermittent leave under the FMLA for her serious health conditions, interfering with her rights and retaliating against her for attempting to exercise the same.

## PARTIES

2. Plaintiff Corrin Glaum currently resides at 7949 Ridge Ave. Apt. C28, Philadelphia, PA 19128.

3. Upon information and belief, Defendant PANCO Management of New Jersey, LLC is a limited liability company organized and existing under the laws of the State of New Jersey with a headquarters and principal place of business at 80 W Plaza One, Saddle Brook, NJ 07663. Upon information and belief, Defendant is a property management company which operates several business locations within the Commonwealth of Pennsylvania and within this judicial district, including, during the course of Plaintiff's employment, the residential property called The Point at City Line in Philadelphia, PA, at which Plaintiff was employed at all times relevant hereto.

## JURISDICTION AND VENUE

4. On or about February 10, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), thereby satisfying the requirements of 42 U.S.C. §§ 12117(a); 2000e-5(b) and (e). Plaintiff's EEOC Charge was docketed as Charge No. 530-2020-02569. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice alleged herein.

5. By correspondence dated May 10, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising her that she had ninety (90) days to file suit against Defendant.

6. On or about August 2, 2021, within the relevant statutory timeline, Plaintiff filed the instant matter.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

8. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's federal claims.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as Defendant resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Plaintiff began her employment with Defendant as Assistant Property Manager on or about February 29, 2016, when Defendant's parent company, Pantzer Properties, acquired the high-rise residential property located at 6100 City Ave, Philadelphia, PA 19131, which had until then been operated by Plaintiff's prior employer, an affiliate of Berkshire Group.

14. Prior to the acquisition, Plaintiff had worked at the property, which Defendant renamed The Point at City Line, since March 15, 2011.

15. At all times relevant hereto, Plaintiff performed her job well, receiving positive performance evaluations and, until the events outlined below, no discipline.

16. Plaintiff suffers from arthritis, fibromyalgia, and colitis, which constitute disabilities within the meaning of the ADA and PHRA in that, when active, they substantially limit one or more major life activities, including, but not limited to working, sleeping, concentrating, and performing manual tasks, as well as one or more major bodily functions, such as the normal functioning of Plaintiff's digestive and musculoskeletal systems.

17. Plaintiff's chronic health conditions – particularly, her colitis and fibromyalgia – also qualified as "serious health conditions" under the FMLA, entitling Plaintiff to continuous and/or intermittent leave to care for severe flareups which prevented her from working.

18. Defendant knew about Plaintiff's disabilities and/or serious health conditions, as Plaintiff disclosed them to, among other individuals, Plaintiff's supervisors, Deborah Evans ("Ms. Evans"), Senior Property Manager, and Rob Kelly ("Mr. Kelly"), Property Manager, as well as Regional Manager Melanie Huntley ("Ms. Huntley").

19. Beginning in or around 2014, Plaintiff began reporting to work at 9:30 am, rather than 9 am, as a reasonable accommodation for her disabilities, in particular Plaintiff's colitis.

20. On July 22, 2019, Defendant hired Paul Gomberg ("Mr. Gomberg") in the position of Property Manager.

21. Shortly thereafter, on or about August 1, 2019, Plaintiff began experiencing exacerbated symptoms in connection with Plaintiff's colitis and fibromyalgia (the latter in the form of a severe migraine) and called out of work to recover.

22. Upon Plaintiff's return to work, Mr. Gomberg asked Plaintiff to explain her absence, whereupon Plaintiff disclosed her aforementioned disabilities and/or serious health conditions.

23. In response, Mr. Gomberg stated, "That explains it."

24. On August 8, 2019, Plaintiff was called into Mr. Gomberg's office and asked if Defendant's HR Department had a note on file regarding Plaintiff's disabilities.

25. Plaintiff responded that they did not, because Plaintiff had not previously been asked to provide one, despite the fact they were not new health conditions.

26. Mr. Gomberg then began berating Plaintiff about the lack of documentation and alleged incorrect information about Plaintiff's attendance.

27. During this meeting, it became clear that Mr. Gomberg was displeased that Plaintiff had taken a sick day due to her serious health conditions.

28. Following her meeting with Mr. Gomberg, Plaintiff contacted her doctor's office, which sent Defendant documentation regarding the chronic nature of Plaintiff's disabilities and need for a reasonable accommodation.

29. In the interim, Plaintiff reflected on Mr. Gomberg's aggressive attitude concerning her health conditions and, on August 9, 2019, decided to file a complaint with HR, first emailing Megan Hall ("Ms. Hall"), to tell her Plaintiff felt she was being "singled out" due to and inappropriately questioned about her health conditions.

30. Shortly thereafter, Mr. Gomberg asked to speak with Plaintiff in his office.

31. In response, Plaintiff stated that she did not feel comfortable meeting with him at that time.

32. Mr. Gomberg then replied, "You have a horrible attitude. You need to go home."

33. Plaintiff advised Mr. Gomberg that she would not be going home, as she was waiting to hear back from HR.

34. Mr. Gomberg replied, "Oh, you want to play that game? I can play that game, I'll call HR too and we'll see who wins."

35. Plaintiff advised Mr. Gomberg that she was not "playing a game," and that he made her feel very uncomfortable.

36. Then, in an elevated tone of voice, Mr. Gomberg exclaimed, "You better get comfortable or I will have you replaced."

37. Following Mr. Gomberg's threat of termination, Plaintiff contacted Ms. Hall and informed her of this verbal exchange.

38. Plaintiff told Ms. Hall that she felt she was being retaliated against, and in response, Ms. Hall advised Plaintiff that her job was safe and she would not be terminated.

39. Additionally, Ms. Hall informed Plaintiff that she had already notified Jennifer Mitchell ("Ms. Mitchell"), Regional Manager, of Plaintiff's complaint.

40. Indeed, Ms. Hall scheduled a meeting for August 13, 2019 at 10 am, that was to include Plaintiff, Ms. Hall, Ms. Mitchell, and Mr. Gomberg, supposedly to address Plaintiff's complaint.

41. On August 12, 2019, the following Monday, Mr. Gomberg avoided interacting with Plaintiff until Kevin Campbell ("Mr. Cambell"), Leasing Agent, left for the day.

42. He then approached Plaintiff in a confrontational manner and began asking her a series of questions.

43. Mr. Gomberg's hostility toward Plaintiff was so apparent that Defendant's Concierge, Christina Sanchez ("Ms. Sanchez"), kept coming into the office after Mr. Campbell left to check on Plaintiff and make sure Mr. Gomberg's unprofessional behavior did not escalate.

44. It is Plaintiff's understanding that Ms. Sanchez was terminated from employment shortly thereafter.

45. The following day, Ms. Hall's scheduled 10 am meeting was canceled without notice, and Mr. Gomberg informed Plaintiff he would stepping out for a meeting until 1 pm.

46. At approximately 1:30 pm, Mr. Gomberg, Ms. Hall, and Ms. Mitchell walked into the building together and requested Plaintiff meet with them.

47. Ms. Mitchell then told Plaintiff that Mr. Gomberg did not do anything wrong and that Plaintiff was being too "sensitive."

48. Ms. Hall disagreed, stating that it was inappropriate for Mr. Gomberg to be asking Plaintiff questions about her health conditions, which was something that only HR should be doing.

49. Mr. Gomberg then stated that he felt "threatened."

50. In disbelief, Plaintiff replied, "You're threatened? I'm threatened. You threatened my job."

51. After the meeting, Plaintiff heard Mr. Gomberg yelling at Ms. Hall and Ms. Mitchell, declaring, "It's either her or me."

52. Shortly thereafter, Ms. Mitchell asked Plaintiff whether she would be able to work with Mr. Gomberg.

53. Given the aforementioned exchange, Plaintiff replied, "I don't know," and explained that she felt uncomfortable.

54. They then asked Plaintiff whether she would be willing to relocate to Defendant's downtown location.

55. Plaintiff replied that she was not willing to do so because she had worked at the Point at City Line location for over eight (8) years.

56. Moreover, Defendant's downtown location, apart from being a longer commute for Plaintiff, is a less favorable place to work, given its extremely high turnover rate.

57. It is Plaintiff's understanding that Defendant did not ask whether Mr. Gomberg would relocate to Defendant's downtown location.

58. Shortly thereafter, on or about August 15, 2019, Ms. Hall and Defendant's Vice President, Katherine Masterson ("Ms. Masterson"), began to interview Plaintiff's coworkers in what Plaintiff was led to believe was an investigation into Plaintiff's complaints of disability discrimination and retaliation.

59. However, after several interviews had been conducted, Plaintiff was informed by one of her coworkers that Ms. Hall and/or Ms. Masterson were asking Plaintiff's coworkers whether they thought Plaintiff was racist, whether Plaintiff discriminated against individuals applying for housing based on their jobs, and whether they believed Plaintiff was violating the Fair Housing Act.

60. Additionally, it is Plaintiff's understanding that Ms. Hall and/or Ms. Masterson went a step further and actually asserted during these interviews that Plaintiff was, in fact, racist, and that Plaintiff would discriminate against individuals on the basis of their jobs.

61. Not only was Defendant's investigation thus focused on baseless accusations of alleged race discrimination, but it is Plaintiff's understanding that no effort was made to investigate Plaintiff's complaints against Mr. Gomberg.

62. On August 19, 2019, Plaintiff was advised by Ms. Hall and Ms. Masterson, that Plaintiff was being terminated from employment for "being racist," despite never having been accused of anything of the sort during Plaintiff's near decade of employment with Defendant.

63. Accordingly, Plaintiff believes and therefore avers she was discriminated against and ultimately terminated because of her actual disabilities and/or past record of impairment, because Defendant regarded Plaintiff as disabled, and in retaliation for Plaintiff's complaints regarding the same as well as Plaintiff's requests for a reasonable accommodation under the ADA/PHRA.

64. Plaintiff further avers that Defendant failed to provide Plaintiff with a reasonable accommodation for her disabilities in violation of the ADA/PHRA and retaliated against Plaintiff because of Plaintiff's requests for the same.

65. Upon information and belief, Plaintiff's job responsibilities have subsequently been reassigned to a non-disabled individual.

66. Plaintiff was capable of performing the essential functions of her job with or without a reasonable accommodation, including, but not limited to, flexible scheduling and/or intermittent medical leave to cope with particularly severe flareups.

67. Defendant failed to provide Plaintiff with notice of her rights under the FMLA to care for her serious health conditions, including, but not limited to, the ability to take intermittent leave for full or partial day absences resulting therefrom.

68. It is believed and therefore averred that Defendant utilized Plaintiff's taking of sick days and/or a modified work schedule for her serious health conditions, for which she would have been eligible under the FMLA, as a "negative factor" in the decision to terminate her.

69.     Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, struggled to obtain other employment and has been and will be forced to expend significant out-of-pocket expenses on health care.

70.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

## COUNT I
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
## DISCRIMINATION & RETALIATION

71.     Paragraphs 1 through 70 are hereby incorporated by reference as though the same were fully set forth at length herein.

72.     At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act.

73.     At all times relevant hereto, Defendant employed at least fifteen (15) employees.

74.     Plaintiff is a qualified individual with a disability within the meaning of the ADA.

75.     Defendant was aware of Plaintiff's disability, record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

76.     Upon information and belief, Plaintiff has since been replaced by a non-disabled individual.

77.     Defendant failed to engage in an interactive process with Plaintiff to determine whether she could perform the essential functions of her job with or without a reasonable

accommodation, such as flexible scheduling or intermittent medical leave to cope with particularly severe flareups.

78.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees have violated the ADA by discharging Plaintiff because of her disability, her record of disability/impairment, because they regarded her as being disabled within the meaning of the ADA, and/or in retaliation for requesting a reasonable accommodation for her disability and complaining about disability-related harassment, discrimination, and retaliation.

79.     As a result of Defendant' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a)     Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b)     Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c)     Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

d)     Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e)  Pre-judgment interest in an appropriate amount; and

f)  Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT
## 43 P.S. § 951, *et seq.*
## DISCRIMINATION & RETALIATION

80. Paragraphs 1 through 79 are hereby incorporated by reference as though the same were fully set forth at length herein.

81. Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of the protected rights of Plaintiff.

82. Plaintiff is a qualified individual with a disability within the meaning of the PHRA in that, at all times relevant hereto, she suffered from one or more physical conditions which substantially limited her in one or more major life activities, as stated above.

83. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

84. It is believed and therefore averred that Defendant terminated Plaintiff's employment on the basis of her actual and/or perceived disabilities and in retaliation for her requests for reasonable accommodations in connection thereto and/or complains of disability-related harassment, discrimination, and retaliation.

85. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

b) Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

c) Compensatory damages in an amount to be determined at trial;

d) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

e) Pre-judgment interest in an appropriate amount; and

f) Such other and further relief as is just and equitable under the circumstances.

## COUNT III
## FAMILY AND MEDICAL LEAVE ACT
## 29 U.S.C. § 12101, *et seq.*
## INTERFERENCE AND RETALIATION

86. Paragraphs 1 through 85 are hereby incorporated by reference as though the same were fully set forth at length herein.

87. At all times relevant hereto, including 2019 and 2020, Defendant employed in excess of fifty (50) people at or within a seventy-five (75) mile radius of Plaintiff's worksite.

88. Defendant is a "covered employer" under the FMLA.

89. Plaintiff was an eligible employee under the FMLA and was entitled to twelve (12) weeks of job-protected intermittent leave to obtain treatment and/or recover from flareups of her chronic serious health conditions, including, but not limited to fibromyalgia and colitis.

90. Defendant willfully violated the FMLA by failing to provide Plaintiff with notice of her rights to leave under the FMLA and utilizing Plaintiff's absences caused by her serious health condition requests and need for medical leave in connection with the same as a "negative" factor in its decision to terminate Plaintiff's employment.

91. Defendant also retaliated against Plaintiff by terminating her employment for requesting intermittent leave and/or flexible scheduling in violation of the FMLA.

92. The aforementioned actions constitute both interference and retaliation violations of the FMLA.

93. Plaintiff has, because of Defendant's wrongful termination of her employment, struggled to obtain other employment and has suffered significant wage losses and loss of potential bonuses.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, loss of health benefits, and raises in an amount to be determined at trial, but no less than $150,000;

b) Liquidated damages;

c) Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as the Court deems just and equitable under the circumstances.

.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable

                    Respectfully submitted,

                    **MURPHY LAW GROUP, LLC**

By:   /s/ Michael Groh
       Michael Murphy, Esquire
       Michael Groh, Esquire
       Eight Penn Center, Suite 2000
       1628 John F. Kennedy Blvd.
       Philadelphia, PA 19103
       TEL: (267) 273-1054
       FAX: (215) 525-0210
       murphy@phillyemploymentlawyer.com
       mgroh@phillyemploymentlawyer.com
       Attorneys for Plaintiff

Dated: August 2, 2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.